788 A.2d 717

**Robert Martin MILLER**

v.

**Mary Elizabeth MILLER.**

**No. 93, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Jan. 10, 2002.

Cynthia E. Young, Annapolis, for appellant.

David S. Goldberg, Gaithersburg, for appellee.

Argued before DAVIS, KENNEY, RAYMOND G. THIEME, JR., (retired, specially assigned), JJ.

DAVIS, Judge.

Although the instant appeal emanates from a divorce proceeding, the principal issue raised is the authority of the Chancellor to determine whether legal fees accrued and owed to the guardian *ad litem* constitute child support or simply legal fees, no different from legal fees awarded by the court to a husband or wife in any divorce proceeding in which issues involving the best interest of minor children are litigated. Recognizing that the authority to make this determination reposes with the legislature, should this Court construe a statutory enumeration of what constitutes child support as a statement that a conspicuous and substantial expense omitted from that list, i.e., the legal fees payable to a guardian *ad litem*, was not intended to be child support? Should we decide that the General Assembly's action evidences an intent to relegate guardian *ad litem* fees to the status of other legal fees, would any designation that such fees are child support by this Court constitute establishment of public policy, which is only within the purview of the legislature, in the first instance, and, in the absence of legislative pronouncement, the Court of Appeals?

In answering these and related questions, we are mindful that the trial court's designation of legal fees as child support is not inconsequential and thus implicates public policy considerations. For example, the court's designation is determinative of whether one may be imprisoned for contempt for

failure to pay the amount owed and whether, as in the case at hand, the debtor's wages may be garnished from federal pension benefits. En route to our disposition of the instant appeal, we are called upon to consider the interrelation, pursuant to the Supremacy Clause, of State law and a relevant federal regulation. We do not express any view herein with respect to what obligations should be favored and we reiterate and underscore that the best interest of the child is always paramount in any judicial *determination* of custody, support, and other matters involving minor children. What is at issue in the case at hand is whether the legislature has evidenced an intent to include as child support the legal fees of counsel appointed to represent the interests of the minor child. In the final analysis, it is within the province of the legislature to decide that characterizing such legal fees as child support serves to promote the best interests of the child.

Appellant Robert Martin Miller and appellee Mary Elizabeth Miller, husband and wife, were parties to a contentious divorce dispute in the Circuit Court for Montgomery County. Of the many issues involved, the most intensely litigated were those surrounding the custody of Joseph, the parties' minor child. As a result, the trial court appointed David S. Goldberg, Esquire, as guardian *ad litem* to protect the best interests of the child. This appeal pertains to the attorney's fees recovered by Goldberg from his appointment on August 6, 1999 until his removal on March 26, 2001.

On November 8, 1999, Goldberg placed the parties' settlement agreement regarding custody and visitation on the record. On November 17, 1999, Goldberg filed a Petition for Allowance of Counsel Fees, which the trial court granted by an order dated December 27, 1999. Pursuant to that order, Goldberg received an award of $8,581.50 for time worked through November 8, 1999.

On February 18, 2000, appellee filed a Motion for Modification of Custody and Other Relief. Shortly thereafter, on April 3, 2000, she sought to compel a mental examination of appellant, to which Goldberg filed a response. At a status confer-

ence held on April 12, 2000, the trial court explained that the Family Law Account, which had been the source of funds for Goldberg's initial award, could not be accessed unless Goldberg was formally reappointed as guardian *ad litem*. At that point, appellant's counsel stated that his client would not consent to Goldberg's reappointment. Days later, appellee filed a Petition for Reappointment of Guardian *Ad Litem* and Custody Evaluator, which was granted by the trial court by order dated June 2, 2000.

On September 7, 2000, Goldberg filed a Petition for Allowance of Counsel Fees (From and After December 1, 1999), which appellant opposed. The petition was granted October 19, 2000, with the order to be submitted at a later date after a second hearing scheduled for February 23, 2001. On February 27, 2001, after hearing the arguments of the parties, two judgments were entered in favor of Goldberg—one against appellee in the amount of $7,387.52 and another against appellant in the amount of $14,340.48. Appellant filed an appeal on March 23, 2001.

On March 8, 2001, Goldberg wrote a letter to the trial court requesting the entry of a supplemental order regarding his attorney's fees. Specifically, he sought an order characterizing his awards as child support. The trial court granted his request, entering two orders dated March 26, 2001. The first order declared that Goldberg's attorney's fee awards, dated December 27, 1999 and February 27, 2001, were "intended to be in the nature of child support recoverable for the support and benefit of the said minor child and within the definition of '[c]hild [s]upport' as set forth in 5 C.F.R. § 581.102(d)." The second order terminated Goldberg's appearance as guardian *ad litem*. Within ten days, appellant moved to vacate the supplemental orders. The motion was denied and, on April 24, 2001, appellant filed this timely appeal.

Appellant presents three issues on appeal, which we restate for clarity [1] as follows:

---

1. Because it allows for a clearer analysis, we have reordered the issues as presented by appellant in his brief. We will first answer question I

I. Did the trial court possess the authority to amend its December 27, 1999 order awarding attorney's fees?

II. Did the trial court possess the authority to characterize an award of attorney's fees to a guardian *ad litem* as child support?

III. Did the trial court possess the authority to award attorney's fees to Goldberg for services rendered from December 1, 1999 until March 26, 2001?

We answer questions I and II in the negative and question III in the affirmative. We therefore reverse the trial court's supplemental order and remand for further proceedings consistent with this opinion.

## DISCUSSION

### I

Appellant contends that, pursuant to Md. Rule 2–535, the trial court did not have the authority to revise its December 27, 1999 judgment in favor of Goldberg because Goldberg's letter to the court was not filed until March 8, 2001. Goldberg concedes that more than thirty days passed between December 27, 1999 and March 8, 2001, but contends that, because it was filed within thirty days from the entry of the trial court's February 27, 2001 order, the court possessed the necessary revisory power. Goldberg argues in support that

[the trial court] was asked to decide whether or not the fees awarded to the guardian *ad litem* were child support for purposes of 5 C.F.R. § 581.102(d). [Its] response was in the affirmative. It would make no logical sense to conclude that the fees awarded in the [February 27, 2001 order] were in the nature of child support, but that the fees awarded in the [December 27, 1999 order] were not. . . .

We disagree with this rationale.

■■■■ "The Maryland Rules of Procedure attempt to balance the court's need for finality against the parties' desire for

---

(argument II in appellant's brief), then question II (argument I in appellant's brief).

substantial justice. Thus, the Rules permit the judge to revise a judgment[,] but only under certain specified conditions." *Office of People's Counsel v. Advance Mobilehome Corp.*, 75 Md.App. 39, 44, 540 A.2d 151 (1988). Pursuant to Rule 2–535(a),

> [o]n motion of any party filed within [thirty] days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

Although Goldberg's letter was not a motion to revise *per se,* we nevertheless address it as a motion filed under Rule 2–535. *Pickett v. Noba, Inc.*, 114 Md.App. 552, 691 A.2d 268 (1997). "If the motion is made within [thirty] days of judgment, 'the trial court possesses an extremely broad power of revision....'" *People's Counsel,* 75 Md.App. at 44, 540 A.2d 151. The key word, however, is "judgment." Goldberg would have us hold that the rules permit a trial court to exercise its revisory power, as long as the motion is made within thirty days of *any order;* however, such a reading "flies in the face of the import of the rule and the cases that have developed under that rule." *Id.* at 46, 540 A.2d 151. Therefore, as stated in our holding in *People's Counsel, supra,* we decline to allow a trial court to revise a judgment if the motion to alter or amend is not made within thirty days of the objectionable judgment. *See id.* In order to have had the December 27, 1999 award modified or supplemented, Goldberg would have had to file a motion within thirty days of that date or before January 26, 2000. Because the motion was not filed until March 8, 2000, however, the trial court's modification of its December 27, 1999 award of attorney's fees was a nullity.[2] We therefore reverse the trial court's judgment entered March 26, 2001 in part. Goldberg's December 27, 1999 award

---

2. Pursuant to Rule 2–535(b), a party who does not file a motion to revise within thirty days of the entry of judgment may nevertheless request a revision on the grounds of "fraud, mistake, or irregularity." Because Goldberg does not raise these grounds as a basis for his motion, however, we decline to discuss them.

of attorney's fees is not "to be in the nature of child support recoverable ... within the definition of '[c]hild [s]upport' as set forth in 5 C.F.R. §§ 581.102(d)."

## II³

Appellant contends that the trial court did not possess the power to characterize Goldberg's award of attorney's fees as child support, because Maryland law has established only a small number of "specifically enumerated categories of expenses [that] may be deemed child support expenses." Attorney's fees, appellant concludes, have not been included in that short list. Goldberg counters that the actions of the trial court were authorized by 11 U.S.C. § 523(a)(5) and 5 C.F.R. § 581.102(d), which provide for the garnishment of wages for the payment of child support. We disagree with Goldberg's position that 11 U.S.C. § 523(a)(5) governs the case at hand. We are persuaded, however, that, in conformity with 5 C.F.R. § 581.102(d), the legal fee of a guardian *ad litem* is not included as one of the expenses expressly deemed by the Maryland legislature to constitute child support. It was, therefore, an abuse of discretion for the trial court to so characterize the legal fees.

The Supreme Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes." *See Hillsborough County v. Automated Medical Laboratories, Inc.,*[4] 471 U.S. 707, 713, 105 S.Ct. 2371, 85

---

**3.** Under the above analysis, the court possessed the authority to modify its February 27, 2001 award if, in its discretion, such a modification was warranted. *See Cromwell v. Ripley,* 11 Md.App. 173, 273 A.2d 218 (1971). The exercise of this discretion under Rule 2–535 will not be disturbed unless clearly shown to have been abused. *Hardy v. Metts,* 282 Md. 1, 381 A.2d 683 (1978). Because we perceive no abuse of discretion, the trial court's modification of the February 27, 2001 award was valid and, as a result, we will discuss the merits of appellant's second issue as it pertains to that award only.

**4.** In explicating the effect of the Supremacy Clause of the U.S. Constitution and the manner in which federal law may preempt a field, the *Hillsborough* Court explained:

L.Ed.2d 714 (1985)(citing *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *Fidelity Federal Savings & Loan Assn. v. De la Cuesta,* 458 U.S. 141, 153–154, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *United States v. Shimer,* 367 U.S. 374, 381–383, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961)). Pre-emption, however, only "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Id.* at 712, 105 S.Ct. 2371 (citing *Gibbons v.*

---

It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to," federal law. *Gibbons v. Ogden,* 22 U.S.(9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C. J.). Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). In the absence of express pre-emptive language, Congress'[s] intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Ibid.;* see *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz, supra,* at 67, 61 S.Ct. 399. *See generally Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes. *See, e.g., Capital Cities Cable, Inc. v. Crisp, supra,* at 699, 104 S.Ct. 2694; *Fidelity Federal Savings & Loan Assn. v. De la Cuesta,* 458 U.S. 141, 153–154, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *United States v. Shimer,* 367 U.S. 374, 381–383, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). Also, for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws. *See, e.g., City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

*Ogden,* 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824)). Therefore, in order to hold, as Goldberg urges, that 5 C.F.R. § 581.102(d) is controlling in the instant case, we must necessarily conclude that Maryland law interferes with or is contrary to federal law concerning the garnishment of wages in the collection of child support. The pertinent federal law, in our view, does not conflict with Maryland law. We explain.

In his brief, appellant relies on 5 C.F.R. § 581.102(d) as it appeared prior to the March 26, 1998 amendments promulgated by the Office of Personnel Management (OPM). In the version upon which appellant relies, child support was defined as

> periodic payments of funds for the support and maintenance of a child or children, and subject to and in accordance with State or local law, includes, but is not limited to, payments to provide for health care, education, recreation, clothing, or to meet other specific needs of such a child or children; *the term also includes attorney's fees, interest, and court costs, if they are expressly made recoverable under a decree, order, or judgment issued in accordance with applicable State or local law by a court of competent jurisdiction.*

5 C.F.R. § 581.102(d)(1980).

In the OPM's revision of 5 C.F.R. § 581.102(d), however, the language in italics above was excluded. The amended version of the regulation defines child support as

> the amounts required to be paid for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing State, or a child and the parent with whom the child is living, which provides for monetary support, health care, arrearages or reimbursement, and which may include other related costs and fees, interest and penalties, income withholding, *attorney's fees, and other relief.*

5 C.F.R. § 581.102(d)(1998)(emphasis added).

As noted by appellant in his reply brief, however, the OPM revision also included an additional section, 5 C.F.R. § 581.307, entitled "Compliance with Legal Process Requiring

the Payment of Attorney Fees, Interest, and/or Court Costs," which states, in relevant part:

> Before complying with legal process that requires withholding for the payment of attorney fees, interest, and/or court costs, the governmental entity must determine that the legal process meets both of the following requirements:
>
> (a) The legal process must *expressly* provide for inclusion of attorney fees, interest, and/or court costs as *(rather than in addition to )* child support and/or alimony payments;
>
> (b) The awarding of attorney fees, interest, and/or court costs as child support ... *must be within the authority of the court, authorized official, or authorized State agency that issues the legal process.* It will be deemed to be within the authority of the court, authorized official, or authorized State agency to award attorney fees as child support and/or alimony if such order is *not in violation of or inconsistent with State or local law, even if State or local law does not expressly provide for such an award.*

(Emphasis added.) Otherwise stated, a court has the authority to characterize attorney's fees as child support in the absence of express state statutory authority, but there is no such authority if it conflicts with State law.

 Pursuant to subsection (a) above, a state statute "must *expressly provide* for inclusion of attorney fees ... as ... child support," and may not be stated as an "addition to" a child support award. We look to the relevant Maryland statute for guidance. Maryland Code (1999 Repl.Vol.), Fam. Law (F.L.) § 12–204, entitled "Determination of Child Support Obligation," provides that "[t]he basic child support obligation shall be determined in accordance with the schedule of basic child support obligations [the "Guidelines"]...." F.L. § 12–204(a). As we have previously explained, "there is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines ... is the correct amount of child support to be awarded." *Horsley v. Radisi,* 132 Md.App. 1, 24, 750 A.2d 692 (2000) (citations omitted). Because F.L. § 12–204 fails to

expressly provide for the inclusion of attorney's fees in a child support award, the characterization of such as child support fails to comply with the relevant legal processes, as set forth in 5 C.F.R. § 581.307(a).

A parent's basic financial obligations may be increased, however, to cover certain specifically enumerated expenses, such as "child care expenses," *see* F.L. § 12–204(g), "extraordinary medical expenses," *see* F.L. § 12–204(h), and "school and transportation expenses," *see* F.L. § 12–204(i). In *Horsley,* we concluded that "the plain and unambiguous language of the statute authorizes the court to supplement the Guidelines obligation only for certain categories of expenses. . . ." *Horsley,* 132 Md.App. at 26, 750 A.2d 692. In the case at hand, however, we must determine whether we can infer, from the failure of the State legislature to include attorney's fees in the list of specifically enumerated additional expenses, that such an expense was intentionally omitted.

In addressing a similar issue, the Maryland Tax Court, unable to accept the State's argument that specifically enumerated exceptions in a federal statute were "surplusage and not intended as an exhaustive list," opined as follows:

> [T]he State's argument implies that Congress failed to accurately express its true intent through the words it in fact used in drafting the statute. Although this is not impossible, we are highly reluctant to attempt to second guess Congress. Unless there is strong evidence of a mistake or ambiguity we will not tamper with the plain meaning of the statute.

*Maryland National Bank v. State Dept. of Assessments & Taxation,* Misc. No. 549 (Md. Tax Court, Dec. 13, 1985). In like manner, we decline to hold that the legislature contemplated further exceptions to F.L. § 12–204, yet failed to include them in the final embodiment of the law. Rather, we hold the characterization of legal fees as child support to be "inconsistent with State or local law," pursuant to 5 C.F.R. § 581.307 and, therefore, invalid.

Faced with a dearth of textual directive, we employ normal rules of statutory construction. *See e.g. Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). One of those rules—negative implication or *expressio unis est exclusio alteris*—provides us with the guidance necessary to analyze the intent of the State legislature. The phrase, meaning "the expression of one is the exclusion of another," was employed by the Supreme Court in *Lindh.* There, the Court reasoned that, when Congress included particular language in one section of a statute, but omitted it in another section of the same act, it could be presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion. *See id. See also Sandoval v. Reno*, 166 F.3d 225 (3rd Cir.1999).

It would appear that F.L. § 12–103 would provide further guidance, as it pertains to the trial court's authority to award costs and counsel fees when a party to the divorce

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or (2) files any form of proceeding: (i) to recover arrearages of child support; (ii) to enforce a decree of child support; or (iii) to enforce a decree of custody or visitation.

Reliance on this statute merely begs the question, however, as it provides us with no more direction than F.L. § 1–202, which provides a court with the authority to "impose against either or both parents [guardian *ad litem* ] fees." The fact that attorney's fees may be imposed against either party to a divorce proceeding does not support the guardian *ad litem's* position in the case at hand. We are not concerned with the imposition of attorney's fees against either party, but the characterization of such fees as child support.[5] The guardian

---

5. Family Law § 1–202 provides for the appointment of a *guardian ad litem:*

In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:
(1) appoint to represent the minor child counsel who may not represent any party to the action; and
(2) *impose against either or both parents counsel fees.*
(Emphasis added).

*ad litem,* Goldberg, reported to this Court at oral argument that his nationwide search had uncovered no decisions which had addressed the question of a trial court's authority to characterize legal fees as child support.[6]

The Court of Appeals of Texas, Fifth District, was faced with a similar question in *Ex Parte Hightower,* 877 S.W.2d 17 (Tex.App.1994). In *Hightower,* a guardian *ad litem* was appointed to represent the minor child, pursuant to Tex. Fam. Code Ann. § 11.10(c) (Vernon 1986), now codified at Tex. Fam.Code § 107.001 (Vernon 2000).[7] The trial court ordered respondent to pay the guardian *ad litem* fees and costs "as child support and as costs of the representation of the minor child." *Id.* at 19. It was argued on appeal that the trial court incorrectly characterized the fees as child support and, as a result, the court erred in holding respondent in contempt for her failure to pay the fees. The guardian relied on Tex. Fam.Code § 11.10(e), now codified at Tex. Fam.Code § 107.015 (Vernon 2000), which provides that a guardian *ad litem's*

> fees and expenses ... may be ordered paid by one or more of [the] parties, or the court or associate judge may order one or more of those parties, prior to final hearing, to pay

---

6. In our research on similar statutes in the other forty-nine states, we found several to have provisions which closely resemble F.L. § 1–202. Missouri's statute, for example, provides that, "[i]n any court case or proceeding in which a guardian *ad litem* is appointed by the court to safeguard the interests of a minor ..., the court may enter judgment in favor of the guardian *ad litem* allowing reasonable compensation for such guardian *ad litem's* services." Mo.Rev.Stat. § 514.335 (2000). Similarly, Utah provides that "[t]he court shall assess all or part of the attorney guardian *ad litem* fees ... against the parties in a proportion the court determines to be just." Utah Code Ann. § 78–7–45 (2000). The relevant Wisconsin provision directs that a "guardian *ad litem* shall be compensated at a rate that the court determines is reasonable. The court shall order either or both parties to pay all or any part of the compensation of the guardian *ad litem.*" Wis. Stat. § 767.045 (2000). As with F.L. § 1–202, however, none of these statutes expressly provide for characterization of such fees as child support.

7. Texas Fam.Code § 107.001 states, in relevant part, that "[t]he court or an associate judge shall appoint a guardian *ad litem* to represent the interest of the child," and is similar in substance to F.L. § 1–202.

the sums into the registry of the court or into an account authorized by the court for the use and benefit of the attorney *ad litem.*

The language of the Texas Code is analogous to F.L. § 12–103 in that it authorizes payment for the services of a guardian *ad litem.* Like the relevant Texas statute, the Maryland statute provides that the fees may be imposed against either party, but, as § 11.10(e) did not support the argument that attorney's fees constitute child support in *Hightower,* F.L. § 12–103 does not support the argument of the guardian *ad litem* in the case *sub judice* that attorney's fees constitute child support.

5 C.F.R. § 581.307 provides that, where a State statute does not "expressly" provide for such an award, it will be deemed within the authority of the court to characterize attorney's fees as child support. From a literal reading of F.L. § 12–204, it would appear that the Maryland legislature said nothing. It is not that the General Assembly did not say anything. By its failure to include attorney's fees as one of the four enumerated expenses for child support, the omission of such fees, in and of itself, constitutes a statement that the legislature did not intend for legal fees to be treated as child support. We deem this omission to be an implicit statement of the law and hold the characterization of attorney's fees as child support to be in conflict with Maryland law.

Notwithstanding this determination, we note, parenthetically, the incongruity of a statutory scheme which provides for payment for services a physician renders for the benefit of the child, yet denies the same status as to legal services provided. In developing F.L. §§ 12–101 to 12–204, the legislature obviously sought to protect the best interests of the child. In establishing basic guidelines and specifically enumerated additions thereto, it provided the support system required to ensure that children would not suffer because their parents separated or were never married. We are concerned, however, that in spite of these legislative initiatives, the best interests of the child, as well as other broader public policy interests, may not be served.

In *In re Blaemire,* 229 B.R. 665 (Bankr.Md.1999), the court noted that

> several other circuits have considered [the characterization of legal fees for a guardian *ad litem* as child support] and have held that fees such as those at issue here, payable to a third party on behalf of a child ... can be "as much for support as payments made directly [to the child]."

*Id.* at 668 (citing *In re Chang,* 163 F.3d 1138 (9th Cir.1998); *In re Jones,* 9 F.3d 878 (10th Cir.)). Central to this observation was the notion that "the best interest of the child is an inseparable element of the child's 'support.'" *Id.* (citing *In re Jones,* 9 F.3d at 881). We agree with this notion and acknowledge the inconsistencies contained within a statute that permits garnishment to ensure the payment of a child's medical expenses, yet disallows the same action to facilitate the payment of a child's guardian *ad litem.* In a judicial process where children whose parents are not together are often left unrepresented, the guardian *ad litem* plays an essential role.

At oral argument before us, Goldberg stressed that it would be difficult to enlist the services of court-appointed guardians without the knowledge that they could be assured that they would be compensated for services rendered. In support of this argument, Goldberg contends that

> [i]t can make no logical difference that [a]ppellant's child support obligation in this case has taken the form of fees due to a guardian *ad litem* rather than periodic payments to the [a]ppellee pursuant to a court order entered in conformity with Maryland Child Support Guidelines.

The opposing view is that the broad powers of the bankruptcy courts are sufficient to protect guardians and to ensure they receive compensation for services rendered. Denying Goldberg's claim, insists appellant, will "merely place [him] in the same position as any other attorney seeking to collect fees from a client. To reverse the amended order will therefore not deprive Goldberg of entitlement to fees earned, but will only affect the manner in which he may seek to collect on the judgment." Moreover, it is argued that guardians *ad litem*

may be protected by requiring that the litigants contribute, in advance, to the Family Law Account from which legal fees will be withdrawn. The *Hightower* court applied precisely this reasoning when it stated:

> The [guardian] *ad litem* also argues that, unless we permit enforcement of *ad litem* fees by contempt, there is no avenue to protect *ad litems* from parents who refuse to pay for the *ad litems'* services. We disagree.

> The trial court may order the parents to deposit funds into the registry of the court or into an account to defray future *ad litem* fees and expenses. The *ad litem* may secure a judgment for the unpaid fees and expenses.

> Although section 11.10(e) authorizes an award of attorney's fees and costs against relator, we hold the unpaid fees and expenses is a debt and not child support. The trial court abused its discretion because it improperly applied the law to the facts. We hold the trial court did not have authority to enforce payment of the fees and expenses by contempt.

*Hightower*, 877 S.W.2d at 21 (citations omitted). In the case at hand, the guardian *ad litem* is attempting to place himself in a superior position to general creditors. This suggestion was rejected by the *Hightower* court in its statement that "[t]he *ad litem* ... may pursue any remedy available to a judgment creditor for collection of the judgment." *Id.* We deem this to be an explicit declaration by the Texas court that a guardian *ad litem* should be in the same position as any other judgment creditor seeking to collect on a judgment. Emphatically and unequivocally, "... we hold the unpaid fees and expenses is a debt and not child support" is how the Texas Court of Appeals designated guardian *ad litem* counsel fees.

Parenthetically, we point out that the *Hightower* court ultimately held that "the trial court abused its discretion in determining the [guardian] *ad litem* fees and expenses are child support," *id.* at 19, because it "did not have authority to enforce payment of the fees and expenses by contempt." *Id.* at 21. Just as characterizing the guardian's fees as child support in *Hightower* would have subjected the relator to

contempt proceedings, thereby greatly enlarging the available legal recourse against her, the legal recourse of the guardian *ad litem* in the case at hand would have dramatically transmuted the character of the proceedings against appellant. We deem such a characterization to be impermissible, in light of the relevant Maryland law.

Regardless of the substantial arguments advanced by both sides, however, we are constrained to hold that it is within the province of the General Assembly to pronounce that a guardian's legal fees constitute child support. In the absence of an enactment by the legislature which would authorize a trial court to characterize attorney's fees as child support, there exists no such authority under State law. We therefore reverse the judgment of the trial court.

### III

Finally, appellant contends that the trial court erroneously awarded Goldberg attorney's fees for services rendered after his termination, but before his reappointment. He contends that Goldberg's obligations were terminated thirty days after the December 3, 1999 entry of judgment, pursuant to Md. Rule 2–132(d), and were not reinstated until the trial court reappointed him as guardian *ad litem* on June 2, 2000. Goldberg counters that his services were not terminated until the trial court's March 26, 2001 order and that he should receive compensation for services rendered after December 1, 1999.

As stated above, Goldberg read into the record on November 8, 1999, the parties' resolution regarding custody and visitation. At that time, he stated that "[t]he parties have both decided that I should remain as guardian *ad litem*, and I am happy to do that," later adding that he and Mary Donahue, the custody evaluator, were to select a therapist for Joseph in the near future and that he would continue to remain involved, should the parties require mediation.[8] When asked whether

---

8. In his brief, appellant misrepresents the agreement between the parties, stating that "[i]t should also be noted that in the settlement

anything had been omitted, appellant's counsel responded, "Sounds good to me." Goldberg also responded, "That is it." On December 3, 1999, the trial court's subsequent order incorporating a transcript of the oral agreement was entered.

Squabbles between appellant and appellee continued after the entry of the December 3, 1999 judgment. As a result, Goldberg's involvement in the case continued as well. Appellee proceeded to file two motions subsequent to the December 3, 1999 entry of the order of the trial court-a Motion for Modification of Custody and Other Relief, dated February 18, 2000 and a Motion to Compel Mental Examination, dated April 3, 2000. Goldberg filed a Response of Guardian *Ad Litem* to Plaintiff's Motion To Compel Mental Examination shortly thereafter.

At an April 12, 2000 hearing, the following dialogue occurred:

THE COURT: Well, I know it is in the transcript that you are going to be retained as the guardian *ad litem*.

[GOLDBERG]: Okay.

THE COURT: However, there is an issue regarding payment of the guardian *ad litem* fees[,] because that is not determined[,] because certainly the [c]ourt is not going to pay it based on the agreement of the parties to continue you.

[GOLDBERG]: Okay.

THE COURT: So, therefore, if you are asking the [c]ourt to pay this, then you are going to need to be reappointed by the [c]ourt. That is number one, and an appropriate motion should be made by the parties.

■ Goldberg contends that the trial court "was in error in suggesting that a reappointment was necessary[, because] the

agreement memorialized on November 8, 1999, counsel for [a]ppellant indicated that Goldberg was to continue on in the capacity of mediator not as guardian *ad litem*." As provided above, Goldberg announced that he would continue in the capacity of guardian *ad litem* and appellant's counsel did not object.

[c]ourt's [o]rder of December 3, 1999, incorporating the transcript of the November 8, 1999 hearing, constituted an order continuing the appointment of the guardian *ad litem*. No further action should have been required." We agree. The trial court's order of December 3, 1999 embodied all terms of the agreement read into the record. This included the continued services of Goldberg as guardian *ad litem* and mediator, if necessary. As evidenced by his continued involvement in the case from December 1, 1999 until the trial court's order dated March 26, 2001, Goldberg promoted the best interest of Joseph at all times, maintaining his obligations as guardian *ad litem*. Consequently, the trial court properly awarded attorney's fees in the amount of $14,340.48 for services rendered from December 1, 1999 until March 26, 2001.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID TWO-THIRDS BY GUARDIAN *AD LITEM* AND ONE-THIRD BY APPELLANT.**